Andrias and Saxe, JJ.,
dissent in part in a memorandum by Saxe, J., as follows: Even a convicted sexual predator like defendant — one who committed a sex crime against his young stepdaughter more than 20 years ago — is entitled to protection from an overcharged prosecution arising from accusations that defendant had begun to focus his attention on another young girl. The conviction for the crime of attempted kidnapping in the second degree was not supported by sufficient evidence, since defendant’s conduct did not bring the intended crime dangerously near to completion. Rather, it relies primarily on what amounts to propensity evidence, essentially reasoning that based on defendant’s prior act of molesting a child, we can expect that he would do it again. The only valid inference that may be made from the facts adduced at trial, namely, that defendant had hoped to have the opportunity to sexually molest the complainant, is not sufficient to establish all the elements of an attempted kidnapping. I therefore dissent.
The record established that the 54-year-old defendant, who had a 20-year-old conviction for a sex crime against his young stepdaughter, was considered by mental health professionals to be a pedophile and that he had focused his interest on the 10-year-old complainant. He was employed at a hardware store occupying the ground floor of the building in which her apart *547 ment was located. The girl’s testimony showed that in 1998, when she began attending the junior high school across the street, and was permitted to walk home alone and to stay home unsupervised until her mother returned from work, defendant began to offer to take her out to get ice cream, to go ice skating, or to go to the movies; she rejected these repeated requests. In late August 1998, while the girl was waiting on the sidewalk in front of the building for her mother to hail a cab, defendant approached her and offered to take her to see the movie “Blade”; she declined.
On Sunday, September 6, 1998, the girl heard an unexpected knock on the door to her apartment. Visitors need to use an intercom system to gain admittance to the building, and no one had called up to her apartment. She responded to the knock because her mother was in the shower at the time. She asked who was there, but got no response. When she looked through the peephole, she could not see anyone. She then put the chain on the door and opened it slightly, and was surprised to see defendant standing there, since the hardware store was closed on Sundays. Defendant was dressed up, and asked the girl if she was “ready to go to the movies.” She said no, and that she had never agreed to go to the movies with defendant. Defendant then asked if she was “busy this week.” She said that she was and closed the door.
Later that week, on Friday, September 11, 1998, the girl saw defendant on her way home from school. As she entered the building, defendant greeted her, got within two to three feet from her and said, “Here’s the keys to my apartment,” as he tried to remove the keys from the chain that he wore around his neck. The girl refused to take the keys. Defendant insisted, asking her three times if she was sure. He then said, “Well, if you think about it, meet me downstairs at four o’clock and I’ll go get you some ice cream.”
By this time, the girl had become frightened of what defendant might do; she and her mother soon contacted the police and filed a complaint, and the police began an investigation.
In his statement to the police, defendant asserted that he and the girl were friends, that they had had many conversations, that he had asked her out on dates a number of times, that on one occasion he knocked on the girl’s door and asked her out to the movies, and that on another occasion he offered her the keys to his apartment and “suggested that she stay at his apartment until he got off of work, [and] that she could play with his cats.”
Defendant was arrested and charged with attempted kidnap *548 ping in the second degree (Penal Law §§ 135.20, 110.00) and endangering the welfare of a child (Penal Law § 260.10 [1]), and was convicted of both counts after a nonjury trial.
I do not dispute that defendant was a pedophile who had focused his attentions and delusions on the complainant. There is no question that he engaged in criminal conduct, including endangering the welfare of a child. The point I dispute is that the acts he engaged in constituted attempted kidnapping.
“A person is guilty of kidnapping in the second degree when he abducts another person” (Penal Law § 135.20). For the purposes of this case, the definition of “abduct” is “to restrain a person with intent to prevent his liberation by . . . secreting or holding him in a place where he is not likely to be found” (Penal Law § 135.00 [2]). “Restraint,” in turn, is defined as the intentional restriction of a person’s movements “by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful” (Penal Law § 135.00 [1]). The movement or confinement is “without consent” when accomplished by “any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old . . . and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement” (Penal Law § 135.00 [1] [b]).
Thus, the kidnapping of a child under 16 may be established if the defendant moved the child from one place to another, even with her acquiescence (as long as the parent has not acquiesced), with the intent to secrete or hold her in a place where she is not likely to be found, as occurred in People v Helbrans (228 AD2d 612 [2d Dept 1996], lv denied 89 NY2d 923 [1996]). There, the elements of kidnapping were satisfied despite the child-victim’s acquiescence, where the defendant, a Hasidic rabbi, prevented the parents of a 13-year-old boy who was studying at his yeshiva from removing their son from the yeshiva, and ultimately secreted the boy to prevent his parents from finding him. The question in the present case is whether defendant’s attempt to give the girl the keys to his apartment is sufficient to establish an attempted kidnapping.
“A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime (Penal Law § 110.00). An attempt is cognizable only where the defendant’s conduct has brought the intended crime “dangerously near” to completion (see People v Naradzay, 11 NY3d 460, 466 [2008]; People v Bracey, 41 NY2d 296, 300 [1977]).
*549 I do not agree with the majority’s conclusion that defendant came dangerously close to completing the kidnapping since all that would have been needed to complete a second-degree kidnapping was the victim’s compliance with his request. The attempted kidnapping cases the majority relies on include some act by the defendant that involved taking hold of the child. In People v Cruz (296 AD2d 22, 25 [1st Dept 2002], lv denied 99 NY2d 534 [2002]), where the conviction of attempted kidnapping in the second degree was affirmed, the defendant physically grabbed the five-year-old boy, telling him he wanted to take him home. In another attempted kidnapping case, People v Antonio (58 AD3d 515 [1st Dept 2009], lv denied 12 NY3d 814 [2009]), where the defendant followed and ran after an 11-year-old girl after expressing his interest in her, going so far as to grab at the girl’s hand and falsely claim to a bystander that he was the girl’s father, this Court explained that “[b]y telling the man who was trying to protect the girl that he, defendant, was the girl’s father, defendant evinced his desire to gain control over the girl[, and] [b]y reaching out for the girl’s hand, he demonstrated his intention to restrain her” (id. at 516). Here, defendant did not grab or unsuccessfully attempt to grab a child, with the intent to take the child away. Rather, he tried to convince her to accept his apartment keys in the hope that she would cooperate with his delusional plans.
To successfully prove that defendant came dangerously near to completing a kidnapping of the child in this particular situation, the evidence would have had to show either that he was near forcibly taking her, as occurred in Cruz and Antonio, or that he came close to taking her with her acquiescence. However, neither means of committing an attempted kidnapping of the child was near completion here. Rather, the evidence establishes that there was essentially no possibility that the child was going to comply with defendant’s request.
The reasoning that all that would have been needed to complete a second-degree kidnapping was the victim’s compliance with his request ignores this fact. A different conclusion would be appropriate if there was proof that in the circumstances or based on her personality, or for some other reason, there was a possibility that the girl would agree to take his keys and wait for him in his apartment. But that is not the case here.
In addition, there is a fundamental flaw in the majority’s reasoning that defendant’s motive to sexually molest the victim was “highly probative of his intent to abduct the victim.” The majority makes an unreasonable leap in logic, and embraces *550 fuzzy psychology, when it infers the intent to abduct based on (1) the similarity in appearance between defendant’s stepdaughter and the complainant, and (2) the reasoning that since (unlike his stepdaughter) the complainant did not live with him, defendant’s desires would have included an intent to abduct her. Defendant’s sexual interest in the complainant did not justify an inference that he harbored the intent to abduct her at that time of the alleged attempted kidnapping; nor did his actual conduct toward her justify any such inference. The inference of an intent to abduct may not properly be based on the suggestion of the People’s expert, in the context of her explanation of the psychological stages in which child molesters gain access to the targeted child, that defendant might have arrived at the point at which he needed to “take control” by abducting the girl. The expert’s suggestion amounted to no more than a theoretical conjecture, which finds no support in the record. The expert also relied for her conclusion on propensity evidence, by reasoning that based on defendant’s prior act of molesting a child, we can assume that he would do it again.
By upholding defendant’s conviction for attempted kidnapping, the majority is, in effect, punishing him for his status rather than for his commission of the crime with which he was charged. Defendant engaged in frightening and deluded criminal conduct. There is reason to be concerned that his desires and delusions could ultimately lead him to actually engage in conduct amounting to kidnapping. However, the conduct demonstrated at trial falls short of an attempted kidnapping as the statute and the cases define it.